**AMERICAN BAKERIES COMPANY, Plaintiff,**

v.

**GOURMET BAKERS, INC. and Peter R. Grimm, Defendants.**

**Civ. No. JH–81–946.**

United States District Court, District of Maryland.

May 6, 1981.

---

**978**

Michael P. Crocker, Baltimore, Md., and John T. Cusack and Gardner, Carton & Douglas, Chicago, Ill., for plaintiff.

Konstantine J. Prevas, Baltimore, Md., and William C. Pelster, Andrew E. Reisman and Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants.

## MEMORANDUM AND ORDER

HOWARD, District Judge.

This civil antitrust action for preliminary and permanent injunctive relief was brought under Section 8 of the Clayton Act, 15 U.S.C. § 19; the Court's jurisdiction is based on 15 U.S.C. § 26.[1] A court trial[2] was held on May 1, 1981. The Court's findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a), follow.

1. The pertinent part of § 26 provides:

   Any ... corporation ... shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including section ... 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execu-

## I. BACKGROUND

### A. *The Parties*

Plaintiff American Bakeries Company ("American") is a Delaware corporation with its principal executive office in Chicago, Illinois. Complaint ¶ 4. American operates baking plants at Flushing, New York and Newark, New Jersey which service a metropolitan New York market area bounded by Manahawkin, New Jersey; Newburgh, New York; River Head in Long Island, New York; and Fairfield County, Connecticut. Becker Deposition ("Dep.") at 6.

American supplies breads, rolls, doughnuts and other bakery products to customers in its metropolitan New York market area. Becker Dep. at 8. American's customers include retail stores, institutions (e. g., hospitals and prisons), and Burger King, Gino's and Rustler restaurants. Becker Dep. at 12–14, 37. The plaintiff sells fresh bakery goods to its retail customers for resale under American's various brand names or under its clients' brand names. Becker Dep. at, e. g., 24, 31, 84–86. American delivers no frozen items to any of its accounts in the New York metropolitan area. Becker Dep. at 27, 37, 41 and 44.

Defendant Gourmet Bakers, Inc. ("Gourmet"), a Maryland corporation, warehouses frozen and dry bakery goods and ingredients, and distributes them to retail stores and McDonald's restaurants. Paterakis Dep. at 30; Grimm Dep. at 18, 32–33. Gourmet neither manufactures nor processes bakery products. Grimm Dep. at 81. The defendant company typically purchases and stores merchandise for their customers; the customers select the vendors with whom Gourmet deals, and the custom-

tion of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue[.]

2. May 1, 1981 was initially set as the hearing date for the plaintiff's motion for a preliminary injunction. At the conclusion of the motions hearing, the parties stipulated to submission of the case on the merits with the Court's decision to be based on the hearing record.

ers also negotiate prices with those vendors. Grimm Dep. at 91.

Defendant Peter R. Grimm is a Maryland resident who serves as chief executive officer and director of Gourmet. Grimm Dep. at 4, 6. Mr. Grimm owns 45 percent of Gourmet's stock and is a co-trustee of an additional 10 percent of the defendant company's stock. Grimm Dep. at 20–21.

### B. *Context of the Action*

The plaintiff's Board of Directors is currently involved in a proxy contest to retain control of American. Plaintiff's Exhibit 29 at 2–3 and Defendants' Exhibit 1. Defendant Grimm is one of the insurgent candidates for a directorship of the plaintiff company. Defendants' Exhibit 1. American's annual meeting and election of directors is scheduled for May 8, 1981. Plaintiff's Exhibit 29. Consequently, the Court expedited the hearing and resolution of this matter. *See* Fed.R.Civ.P. 65(a).

### II. DISCUSSION

### A. *Appropriate Standard*

Section 16 of the Clayton Act provides for injunctive relief "under the same conditions and principles as injunctive relief ... is granted by courts of equity." *See* n. 1, *supra.*

In the Fourth Circuit, "the trial court standard for interlocutory injunctive relief is the balance-of-hardship test." *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). Indeed, if there is a decided imbalance between the likelihood of irreparable injury to the party seeking such relief if the injunction is not issued and the likelihood of harm to the opposing party if the injunction is issued, there is no necessity for a showing of likely success on the merits. *Blackwelder, supra* at 196.

As the parties have submitted the case for determination on the merits, however, it is necessary to focus on the elements of the plaintiff's claim. American brought this action to prevent an alleged incipient violation of Section 8 of the Clayton Act.[3] Section 8

prohibits *horizontal* interlocks involving:

(1) One person who serves as a director of two or more competing business corporations, if one or more of the corporations has assets of more than one million dollars[.]

3 Von Kalinowski, *Antitrust Laws and Trade Regulation*, § 20.01 at 20–6 (emphasis in original).

Thus, an interlocking directorate that violates Section 8 is found when

(1) one person serves as director for two or more business corporations;

(2) the combined capital, surplus, and undivided profits of any one of the corporations exceeds one million dollars;

(3) each corporation is engaged, in whole or in part, in interstate commerce; and

(4) the corporations compete with each other.

3 Von Kalinowski, *supra*, § 20.02 at 20–12.

Section 16 provides for relief "against threatened loss or damage" from a violation of Section 8. American contends that the election of defendant Grimm would result in disclosure of the plaintiff's trade secrets

---

**3.** 15 U.S.C. § 19, which provides in pertinent part:

No person at the same time shall be a director in any two or more corporations, any one of which has capital, surplus, and undivided profits aggregating more than $1,000,000, engaged in whole or in part in commerce, ... if such corporations are or shall have been theretofore, by virtue of their business and location of operation, competitors, so that the elimination of competition by agreement between them would constitute a violation of any of the provisions of any of the antitrust laws. The eligibility of a director under the foregoing provision shall be determined by the aggregate amount of the capital, surplus, and undivided profits, exclusive of dividends declared but not paid by stockholders, at the end of the fiscal year of said corporation next preceding the election of directors[.]

and would expose American to criminal antitrust liability. Before considering the validity of these contentions, it is first necessary to determine whether Grimm's service on American's board of directors would be violative of Section 8.

The first three elements do not raise any serious issues. Grimm is now a director of Gourmet, Grimm Dep. at 19, and, upon election to American's board, would be a director of the plaintiff and defendant corporations. With respect to the second element, it is clear that American had capital in excess of $1,000,000 in the fiscal year preceding the May 8 election. See Plaintiff's Exhibit 29 at 5. It is also undisputed that the plaintiff and defendant corporations are engaged in interstate commerce. See Becker Dep. at 5–6; Grimm Dep. at 22–27.

Indeed, the only contested issue is whether the plaintiff and defendant corporations compete with each other.

### B. Competition vel non

■ Despite what one commentator has termed a "paucity of Section 8 case law," there are clear antitrust guidelines for determining whether corporations compete. 3 Von Kalinowski, supra, § 20.02 at 20–16. For example, the "relevant market test" may be applied to determine whether corporations (1) sell products which are physically or functionally identical (i. e., reasonably interchangeable) (2) within the same geographic area. Id.

■ It is established that both corporations are commercially active within the New York metropolitan area. See Becker Dep. at 6; Grimm Dep. at 64. To determine whether that commercial activity is competition, however, requires the identification and examination of each corporate party's products.

As noted above, American sells fresh bakery goods to its retail, institutional and fast-food clients. Becker Dep. at 12–14, 37.

American sells no frozen items to any of its metropolitan New York clients. Becker Dep. 27, 37, 41, 44.

Defendant Grimm testified at trial that about 98 percent of Gourmet's business is in supplying frozen and dry food products to its customers; he further testified that roughly 88 percent of Gourmet's business was generated by the sale of non-dairy products to the McDonald's restaurant chain. Grimm also related that about one percent of Gourmet's revenues from McDonald's was generated by the sale of steak rolls. The rolls are purchased fresh by Gourmet, frozen and stored, and ultimately shipped to McDonald's restaurants.

Some 12 percent of Gourmet's sales are generated by supplying the in-store bakery departments of various retail stores. Gourmet delivers to these stores frozen dough and dry mixes which are fabricated by store personnel into finished baked goods. See, e. g., Grimm Dep. at 76; Defendants' Exhibit 2 ¶¶ 3, 6, and 7.

From the observation that the raw ingredients delivered by Gourmet are ultimately purchased by consumers in forms similar to American's products, the plaintiff concludes that the corporate parties sell interchangeable, hence, competing, products.

This facile conclusion assumes that the retail customer is the relevant focus of the Court's analysis. From the retail customers' standpoint, however, it is clear that American's competitors are actually those entities which negotiate the prices of raw materials, process them into various baked goods, and offer those goods to the retail consumer; in short, entities such as the Pathmark stores are American's actual competitors for the retail trade.

The Court finds that the relevant product market is defined by the corporate parties' respective restaurant and retail store clients. It is evident that both American and Gourmet have several common retail chain customers. See Becker Dep. at 89, 123; Grimm Dep. at 58, 93. Analysis of the

corporate parties' trade with Pathmark is particularly helpful because that trade is apparently typical of their respective dealings with retail chains, and because it permits application of traditional tests of competitiveness:

> The presence of actual competitiveness ... is determined by two tests:
>
> (1) Can the two products (the defendant's and the substitute) be said to compete because they are reasonably interchangeable with respect to the uses to which they can be put?
>
> (2) Are the two products actually competitive because there is a high cross-elasticity of demand on the part of customers?
>
> Basically, the two tests pose the same question: Are the defendant's products interchangeable with a suggested substitute? In the first test, interchangeability is gauged by product uses; in the second, by consumer response.

2 Von Kalinowski, *Antitrust Laws and Trade Regulation,* § 13.03 at 13–37—13–38 (footnotes omitted).

As the plaintiff has submitted no evidence on the cross-elasticity of relevant consumer demand, the Court must apply the test of reasonable interchangeability of use to determine whether either of two product characteristics is present:

(1) *Similarity of use.* Products that can be used for the same purpose effectively compete.

(2) *Physical similarity.* Products that have essentially similar physical characteristics effectively compete.

2 Von Kalinowski, *supra,* at 13–39—13–40 (footnotes omitted).

There is essentially no physical similarity between the products supplied to Pathmark by American and Gourmet. American sells finished freshly baked products to Path-

mark. *See, e. g.,* Plaintiff's Exhibits 1, 5 and 20. Gourmet essentially sells frozen dough and mixes which Pathmark's employees process into baked goods. *See* Defendants' Exhibit 2 ¶ 6 and *compare* Plaintiff's Exhibits 30 and 31 (defendant's raw dough) *with, e. g.,* Plaintiff's Exhibits 7, 20 and 21.

The same inspection that discloses the lack of physical similarities between the parties' respective product groups also discloses the lack of similarities of use. American's bakery products are supplied in finished form and are retailed in the configuration in which they are delivered. Gourmet delivers raw materials whose ultimate retail form is determined by the processor's skill and ingenuity.

Thus, with respect to the corporate parties' dealings with Pathmark and similar retail outlets, the Court concludes that there is no competition between American and Gourmet.

The other potential area of competition between American and Gourmet is their trade with fast-food restaurants. As noted above, American sells fresh steak rolls and hamburger buns to Burger King and Gino's restaurants, and hamburger rolls to Rustler restaurants. Becker Dep. at 37, 40 and 42.

Gourmet sells frozen steak rolls[4] to McDonald's but sells them no fresh rolls or buns. Grimm Dep. 81, 88.

The first thing one notices in examining the parties' restaurant trade is that they have no common customers. It should also be noted that the sole common products supplied to the fast-food restaurants are steak rolls; these rolls constitute only about one percent of Gourmet's sales to McDonald's. Even assuming McDonald's, Burger King, Gino's and Rustler restaurants comprise a discrete consumer group, an analysis of the corporate parties' respective courses of dealing with these restaurants highlights important differences.

---

**4.** Gourmet purchases fresh steak rolls which are then frozen, stored, and eventually distrib- uted to McDonald's outlets. Grimm Dep. at 88.

As noted above, Gourmet is essentially a warehousing and distribution operation. The firm has no manufacturing capacity and warehouses only those items selected by McDonald's. *See* Grimm Dep. at 88. McDonald's selects the suppliers of the goods and negotiates prices. *Id.* Absent the ability to set product prices or determine product specifications, Gourmet cannot be deemed one of American's competitors. *See Paramount Pictures Corp. v. Baldwin-Montrose Chemical Co., Inc.*, 1966 Trade Cas. ¶ 71, 678 (S.D.N.Y.1966). In *Paramount,* Judge Palmieri noted:

> GAC as an agent for others in the business of supplying television programming, cannot be said to be a competitor of the Paramount subsidiaries which are producer-owners of the programming they seek to purvey. This is so because only the producer-owners, and not the agent, can determine to whom and at what price the program shall be sold. The agent, notwithstanding the usual influential relationship with the producer-owner, having no power to make an agreement fixing prices or allocating markets, is not a competitor within the meaning of the statute. See *Brown Shoe Co. v. United States*, 370 U.S. 294, 334 (1962). GAC's competition with the sales staffs of Paramount's subsidiaries is similarly on behalf of others who dictate prices and markets.

Conclusion of Law 5.

Similarly, Gourmet, when acting on behalf of McDonald's, is at the behest of a client which dictates prices and the items Gourmet is to warehouse and distribute. The relationship between McDonald's and Gourmet is in sharp contrast to American's independent solicitation and servicing of Gino's, Rustler and Burger King restaurants. *See, e. g.,* Becker Dep. 23–24, 36–43. American, but not Gourmet, can bring direct pressures to bear on prices and quantities in the steak-roll market. Gourmet is incapable of fixing prices or allocating market shares for steak rolls and, thus, may not be deemed a competitor in this limited market.

Thus, in the two arenas in which both corporate parties are active, sales to retail outlets and to fast-food restaurants, the parties are not in competition.

## III. CONCLUSION

As American and Gourmet are not competitors, defendant Grimm's service on the boards of the plaintiff and defendant corporations would not violate Section 8 of the Clayton Act. Therefore, American's application for permanent injunctive relief must be denied.

Accordingly, it is this 6th day of May, 1981, by the United States District Court for the District of Maryland,

*SO ORDERED.*